UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10643-RWZ

PATRICIA A. KASSNER

v.

CHASE HOME FINANCE, LLC, et al.

<u>ORDER</u>

January 27, 2012

ZOBEL, D.J.

Plaintiff, Patricia Kassner, brings this nine-count complaint against Chase Home Finance LLC ("CHF"), JP Morgan Chase Bank, N.A. ("JPMC"), and the Federal Deposit Insurance Corporation ("FDIC"), as receiver for Washington Mutual ("WAMU"), alleging various violations of state and federal real estate and consumer protection laws in connection with a $1.9 million residential home loan issued to plaintiff by WAMU in 2007. Docket # 1 Ex. B. The action originated in state court but was removed by the FDIC pursuant to 12 U.S.C. § 1819(b)(2)(B) of the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRRA"), as amended, 12 U.S.C. § 1819 <u>et seq.</u> Docket # 1. Each defendant has moved to dismiss the complaint. Docket ## 13, 9, 15.

**I. The Complaint**

These are the facts alleged in the complaint. Plaintiff entered into a loan agreement with and gave to WAMU a mortgage and promissory note in the principal sum of $1,900,000 in connection with the purchase of a residential property in

December 2007.

The complaint alleges a number of improprieties in connection with the execution of the loan in 2007, principally that:

> (1) WAMU's (and plaintiff's) attorney failed to bring to plaintiff's attention the fact that her loan application was inaccurate because it stated that she earned $60,000 per month when her annual income was actually $6,000 per month;
> (2) WAMU's Truth in Leading Act ("TILA") disclosure stated only the initial interest rate on the loan, 2.25 %, but not the fully indexed rate of 8.512 %;
> (3) the TILA disclosure and Notice of Right to Cancel ("NRC") form contained handwritten notations made after the loan closing;
> (4) plaintiff received only one NRC form instead of the statutorily required two; and
> (5) WAMU failed to clearly and conspicuously disclose which one of four loan options stated on the "Adjustable Rate Mortgage Disclosure Form" plaintiff was actually receiving.

On September 25, 2008, WAMU was seized by the U.S. Office of Thrift Supervision and placed into receivership with the FDIC. Simultaneous with the seizure, WAMU's deposits and loan portfolio were purchased by JPMC. Under the Purchase Assumption Agreement ("PAA"), JPMC purchased from the FDIC whatever assets and liabilities WAMU owned as of September 25, 2008. Plaintiff states, upon information and belief, that sometime after the loan agreement was executed and before September 2008, WAMU sold plaintiff's loan and assigned her mortgage to a third party retaining only the loan servicing rights to the mortgage. Accordingly, plaintiff alleges that JPMC bought only the servicing rights to plaintiff's loan from the FDIC, because she says, that is all WAMU owned (and therefore could have transferred) at the time WAMU went into receivership.

Sometime after September 25, 2008, CHF began collecting loan payments from

plaintiff on behalf of JPMC and represented to plaintiff that her note and mortgage are lawfully owned and/or held by JPMC and that CHF will service plaintiff's loan in accordance with the original terms of the note and mortgage. Plaintiff alleges that CHF is a "debt collector" as the term is defined under federal and state law and that other than conclusory declarations from JPMC neither JPMC or CHF has provided any evidence that JPMC lawfully owns plaintiff's loan and that CHF is lawfully entitled to collect it.

On April 7, 2010, plaintiff's counsel sent a Qualified Written Request ("QWR") pursuant to the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2605(e)) noting errors in the original loan transaction and requested copies of certain documents related to plaintiff's loan as well as the name and address of the holder of the promissory note. On the same day, plaintiff made a demand for rescission and validation. CHF responded on May 7, 2010, with documentation of the loan and denied plaintiff's request to rescind. Plaintiff asserts that CHF's response was deficient and not in compliance with applicable law. On May 27, 2010, plaintiff sent to CHF a so-called "30 day demand letter" pursuant to the Massachusetts Consumer Protection Act (Mass. Gen. L. c. 93A) which, she alleges, was never answered.

Plaintiff claims under an impressive collection of state and federal statutes, and in equity, amounting to all but the proverbial "kitchen sink." The nine counts of the complaint, each brought in various permutations against the three defendants, allege

3

wrongs of three kinds.[1] First, defendants (as successors-in-interest) are liable for the improprieties surrounding the execution of the original 2007 home loan. Second, defendants failed to properly respond to plaintiff's inquiries and validate the underlying debt after WAMU went into receivership. And third, defendants engaged in improper debt collection techniques while attempting to collect the underlying mortgage debt. Plaintiff seeks an injunction, rescission of her mortgage loan and cancellation of any security interest in the property, monetary damages and attorney fees.

As noted, each defendant has moved to dismiss the complaint in its entirety. Docket ## 13, 9, 15.

## II. Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559

---

[1]
**Count I:** requests a declaratory judgment that plaintiff is entitled to the rescission of her loan under the Truth in Lending Act ("TILA") (15 U.S.C. §§1635, 1640) including 12 C.R.F. § 226.23 ("Reg. Z"), and the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA") (Mass. Gen. L. c. 140D);
**Count II:** requests equitable relief on the ground that the plaintiff has validly rescinded her loan and is entitled to immediate termination of any security interest in the property;
**Count III:** alleges violations of Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2605(e)) by CHF for failing to provide required information regarding the legal ownership of plaintiff's loan upon request;
**Count IV:** alleges violations of TILA including Reg. Z and MCCCDA, by JPMC and the FDIC for alleged improprieties surrounding the execution of the 2007 WAMU home loan;
**Count V:** alleges violations of the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1601, et. seq.) and/or the Mass. Gen. L. c. 93, § 49 (Massachusetts's unfair, deceptive or unreasonable debt collection act) against CHF for failing to validate the 2007 loan debt, attempting to collect on a debt that had not been validated, failing to register as a debt collector and to do business in Massachusetts;
**Count VI:** alleges violations of 209 C.M.R. 18.00 et seq. (Massachusetts' debt collection regulation statutes), by CHF for essentially the same conduct alleged in Count V;
**Count VII:** alleges violations of Mass. Gen. L.. c. 93A (Massachusetts's Unfair Practices Act) against all defendants for engaging in "unfair and deceptive acts" comprising the same behavior complained of in Counts V and VII;
**Count VIII:** although unclear, Count VIII apparently seeks a declaratory judgment that the plaintiff has standing to bring this suit because a judiciable controversy exists; and
**Count IX:** seeks a preliminary injunction enjoining defendants from collecting on the loan in question, and from reporting any nonpayment to any credit reporting bureau during the pendency of this suit.

4

(2007). It does not need "detailed factual allegations," but "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted). Pleadings must make "a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009) (internal citations omitted). Dismissal is appropriate if the complaint does not "possess enough heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (internal citations and alterations omitted).

**III. Analysis**

    **A. Rescission Claims (Count I and Count II )**

The federal Truth in Lending Act ("TILA"), implemented by the Federal Reserve Board of Governors through "Regulation Z" (12 C.F.R. § 226.23) ("Reg. Z"), allows consumers to rescind a credit transaction when a security interest is or will be acquired in a consumer's principal dwelling. The right to rescind must be exercised by midnight of the third business day following:

> "consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23 (3)

5

The MCCCDA is the Massachusetts equivalent to TILA. For present purposes the MCCCDA mirrors TILA in nearly all material respects, except that, MCCCDA extends the right to rescind for an additional year in the case of failed or faulty disclosures; Mass. Gen. L. c. 140D, § 10(f)). However, it is construed by Massachusetts courts in parallel with TILA. McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 422 (1st Cir. 2007).[2]

Having carefully examined her loan documents, plaintiff argues that because all required "notice(s)" and "material disclosures" were not provided to her, she is entitled to an extension of the three-day rescission period up to a maximum of three or four years under TILA or the MCCCDA. She executed the mortgage in December 2007 and presented her notice of rescission to CHF on April 7, 2010. She bases her request to rescind on the defects and errors she identified to CHF in letter(s) dated April 7, 2010 and May 27, 2010. The letters and complaint allege the defects previously listed as items 1 through 5 in Section I above which I address ad seriatim.

**(1) Plaintiff's attorney failed to bring to her attention the fact that her loan application overstated her monthly income**

First, plaintiff alleges that the "attorney who closed the loan, and who upon information and belief, represented both Plaintiff and WAMU, never called this

---

[3] Although JPMC argues that TILA preempts MCCCDA (Docket # 14 at 12), preemption is not applicable here. The Federal Reserve board has ruled that "Credit transactions subject to the Massachusetts Truth in Lending Act are exempt from chapters 2 and 4 of the Federal act. [However,] [t]he exemption does not apply to transactions in which a federally chartered institution is a creditor." 48 Fed.Reg. 14882, 14890 (April 6, 1983). Here, JPMC is not exempt because it does not fit the definition of a "creditor." "The term 'creditor' refers only to a person who both (1) regularly extends ... consumer credit ... and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness...." 15 U.S.C. § 1602(f). WAMU is the "person" to whom the debt is payable on the face of the mortgage documents therefore MCCCDA is not preempted and will apply coextensively with TILA, including its broader four-year statute of limitations. In Re Myers, 175 B.R. 122, 126 (Bkrtcy. D. Mass. 1994) (reversed on other grounds).

discrepancy to Plaintiff's attention during the closing process."

TILA defines as "material" those disclosures involving the annual percentage rate, the finance charge, the amount to be financed, the total number of payments, and the payment schedule. See 15 U.S.C. § 1602(u); 12 C.F.R. § 226.23; Fogle v. Wilmington Finance, No. 08-cv-388-JD, 2011 WL 320572, at *4 (D. N. H. Jan. 31, 2011). Failure of plaintiff's counsel to advise her of a misstatement contained on the loan application, regarding her own reported income, is not a failure of the bank to provide plaintiff with a "material disclosure" under TILA. See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) (The Act only requires that creditors make "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights.").

**(2) Plaintiff received only one copy of the NRC form at the closing**

As this court has held, receiving one copy of the NRC form instead of two does not extend a consumer's right of rescission for failure to provide adequate notice. King v. Long Beach Mortg. Co., 672 F. Supp. 2d 238, 250–51 (D. Mass. 2009)("By deliberately choosing to use the singular form "notice" instead of the plural form 'notices' or 'two copies of the notice,' the Federal Reserve Board intended that delivery of a single copy of the Notice would not trigger an extension of the rescission right."); McKenna v. Wells Fargo Bank, N.A., No. 10–10417–JLT, 2011 WL 1100160 (D. Mass. March 21, 2011) ("as long as a borrower receives one such notice, the rescission period is not extended").

**(3) Handwritten markings were placed on the loan documents after the closing and without plaintiff's knowledge**

Plaintiff points to two handwritten marks, one on the TILA form provided to her at or before the loan closing which states "Also secured by: 64 Perishing Lane, Brewster, MA" and another on the NRC form in the "Your Right to Cancel" section which states "300 Foster Rd. Brewster MA," and is located underneath a line, which was left blank, labeled "identification of transaction." Docket # 1 Ex. B, Sub - ex. I.

The statement on the TILA form that the mortgage is secured by an interest in "64 Perishing Lane" is correct, as 64 Perishing Lane is the property described and secured by the 2007 mortgage. The application for the 2007 mortgage, the 2007 mortgage, and the adjustable rate note all refer to 64 Perishing Lane as the subject property. Docket # 1 Ex. B, Sub - exs. A-C. That such notation may have been added "after the closing, without the plaintiff's knowledge" is irrelevant as the plaintiff alleges no harm therefrom. Rescission rights under these statutes "do not provide a basis for undoing bargains where no harm whatever occurred or could have occurred." In re Fuller, 642 F.3d 240, 243 (1st Cir. 2011) (also stating "it is hard to imagine any court thinking that every small slip-say, a date printed upside down or a name with a letter missing – could automatically allow rescission …").

Plaintiff's related argument that the NRC form may be invalid because handwriting on it listed plaintiff's then current address, 300 Foster Road, Brewster, MA, and therefore described the wrong property secured by the loan similarly lacks merit. First, plaintiff has again failed to allege any harm. Second, the NRC form was admittedly provided to plaintiff at or before the closing for the 2007 mortgage. On its face, the NRC clearly apprised plaintiff of her right to cancel together with the time and

8

manner for exercising the right. It is therefore sufficient notice as a matter of law. See
Melfi v. WMC Mortgage Corp., 568 F 3d 309, 312 (1st Cir. 2009) (under TILA "technical
deficiencies do not matter if the borrower receives a notice that effectively gives [her]
notice as to the final date for rescission and has the three full days to act."); see also
Palmer v. Champion Mortg., 465 F.3d 24, 29 (1st Cir. 2006).

**(4) TILA form did not "clearly and conspicuously" disclose that the initial interest rate of 2.25% would be fully indexed at 8.512%**

Plaintiff points to no requirement that lenders disclose to borrowers a "fully indexed rate;" what TILA does require is that lenders disclose an accurate Annual Percentage Rate ("APR"). 15 U.S.C. § 1602(u); 12 C.F.R. § 226.23. That requirement was met. The TILA form, attached to the complaint, and signed by plaintiff on December 17, 2007, states that the APR on the mortgage will be "8.57062%." Docket # 1 Ex. B, Sub-ex. I. Because 8.512%, the rate alleged in the complaint, differs a mere .04038 % from the APR disclosed on the TILA form, the interest rate disclosed is within the statutory range for acceptable variance under Reg. Z and Massachusetts state law, and plaintiff therefore fails to allege a material disclosure claim under the relevant statutes. 12 C.F.R. 226.22(a)(2)("the annual percentage rate shall be considered accurate if it is not more than 1/8 of 1 percentage point [or .125%] above or below the annual percentage rate determined in accordance with paragraph(a)(1) of this section."); 209 CMR 32.22 (providing same under Massachusetts state law).

**(5) The Adjustable Rate Mortgage Loan Disclosure Statement ("ARM statement") failed to state which one of four possible stated adjustable rate "options" plaintiff was to receive**

The TILA ARM statement provided plaintiff with initial disclosures applicable to "all loan programs" and also "describes the features of the 1, 3, 36 [ ] and 60[ ] month MTA Option ARM." Docket # 1 Ex. B, Sub-ex. I. Plaintiff's loan was for an adjustable rate mortgage that included an interest rate "change date" on February 1, 2008, and "on that day every month thereafter." Docket # 1 Ex. B, Sub-ex. I. The ARM statement shows plaintiff's particular loan formulation, and plaintiff does not contest the accuracy of the disclosures provided. She does complain that the ARM statement, on its face, fails to advise her which loan option she was to receive. However, the precise number of months of an initial ARM is not an enumerated "material disclosure" required by TILA. See Section III(A)(1) above.

Although the definition of "material disclosures" under Reg. Z incorporates 12 C.F.R. § 226.32(c)(4) [3], it only requires that borrowers be apprised: (1) of the amount of the maximum single monthly payments for which they could be held responsible for (based on the maximum interest rate, which also must be disclosed);[4] and (2) that the interest rate and monthly payments may increase during the life of the loan. Therefore plaintiff's claim that the precise loan option was not singled out on that ARM statement fails to establish a TILA violation.

---

[3] 12 C.F.R. § 226.32(c)(4) ("For variable-rate transactions, a statement that the interest rate and monthly payment may increase, and the amount of the single maximum monthly payment, based on the maximum interest rate required to be disclosed under § 226.30").

[4] 12 C.F.R. § 226.30 ("A creditor shall include in any consumer credit contract secured by a dwelling and subject to the act and this regulation the maximum interest rate that may be imposed during the term of the obligation when: (a) In the case of closed-end credit, the annual percentage rate may increase after consummation, or (b) In the case of open-end credit, the annual percentage rate may increase during the plan.").

For all the foregoing reasons, plaintiff fails to establish any deficiency in the disclosures provided with the 2007 mortgage, and the motion to dismiss Count I is allowed. Similarly, because plaintiff fails to allege facts sufficient to establish entitlement to rescission, the motion to dismiss Count II is allowed.

### B. RESPA Claim (Count III)

Count III asserts a claim against CHF under RESPA for failure to adequately respond to plaintiff's inquiries and provide relevant information regarding plaintiff's loan.

Under RESPA a QWR is a written correspondence (not written on a payment coupon or other payment medium supplied by the servicer) that (I) identifies the name and account of the borrower, and (ii) includes a statement of the reasons that the account is in error <u>or</u> provides sufficient detail regarding the information sought. 12 U.S.C. § 2605 (e)(1)(B).

When faced with a QWR, the servicer must acknowledge receipt of the correspondence in writing within 20 days (12 U.S.C. § 2605 (e)(1)(A)) and, if applicable, not later than 60 days (1) make appropriate corrections to the borrower's account; (2) provide the borrower with a written explanation or clarification of the reasons the servicer believes the account is correct; (3) provide the borrower with the information requested or an explanation of why such information is unavailable; and (4) provide the contact information of an individual employed by the servicer who can provide further assistance to the borrower. 12 U.S.C. § 2605(e)(2).

Plaintiff's alleged QWR is a four-page single spaced letter with 37 separate requests for, inter alia, all copies of all documents pertaining to the origination of the mortgage, all loan modification agreements, itemized statements of the loan history, a statement of all charges and advances against the loan, an itemized statement of the escrow account, all property inspection reports, an itemized statement of late charges, a statement of the current amount needed to pay off the loan, the procedural manual used with respect to servicing the loan and many other documents. Docket # 1 Ex. B, Sub-ex. F. The bank's response attached a copy of the executed note, ARM Mortgage Loan Disclosure Statement, Notice of the Right to Cancel statement, Truth in Lending Disclosure Statement and HUD 1–Settlement Statement. Docket # 1 Ex. B, Sub-ex. F. Plaintiff's allege that CHF's response was deficient and not in compliance with applicable law.

CHF argues that plaintiff's letter is not a QWR because the requests made by plaintiff were not "servicer related," and that correspondence about a loan's validity does not constitute a QWR, citing Kee v. Fifth Third Bank, No. 2:06-CV-00602-CW, 2009 WL 735048, at *6 (D. Utah March 18, 2009) ("Challenging the validity of a loan is different from challenging how the loan has been serviced. Consequently, correspondence about the validity of a loan does not constitute a qualified written request").

Although most of the 37 requests are ostensibly not "servicer related," plaintiff's request for a copy of the loan's payment history clearly does relate to the servicing of the loan. CHF did not include that history in its May 7, 2010, response to the QWR. It

12

also failed to provide the contact information of an individual employed by the servicer who can provide further assistance to plaintiff as required by RESPA. This is sufficient to allege a technical RESPA violation.

However, even though CHF's response may have violated RESPA, in order for plaintiff to recover she must also plead either actual damages (demonstrable damages that occur "as a result of" the specific violation complained of) or statutory damages (requiring the showing of a "pattern or practice of noncompliance" by the servicer). 12 U.S.C. §§ 2605(f)(1)(A) – (B); Mantz v. Wells Fargo Bank, N.A., No. 09-12010-JLT, 2011 WL 196915, at *5 (D. Mass. 2011)(dismissing RESPA claim for failure to plead actual damages); In re Holland, No. 04–18099–JNF, 2008 WL 4809493, *9 (Bkrtcy. D. Mass. 2008) (granting summary judgment against debtor, in part, for failure to establish actual or statutory damages arising from lack of a response to QWR).

Because plaintiff does not allege a pattern or practice of noncompliance, statutory damages are inapplicable. As for actual damages, plaintiff alleges: (1) that she "has no actual knowledge of who owns her loans and thus may have been making payments to the wrong party since at least October 2008;" and (2) that she has "incurred monetary damages in having to hire counsel to bring suit to determine the proper ownership of her loan" as a result of CHF's failure to adequately respond to plaintiff's QWR.  Neither is sufficient.

Plaintiff's first allegation of damages is not only speculative but she pleads the exact opposite in the complaint; where she identifies the servicers of the loan together

with the documentation granting such servicing rights. The facts alleged in the complaint belie any assertion that plaintiff could have been paying the wrong party.

Plaintiff's second claim of damages is similarly deficient because attorney's fees for bringing a RESPA suit are not actual damages under the statute. Long v. Deutsche Bank Nat. Trust Co., No. 10–00359 JMS/KSC, 2011 WL 5079586, at *4 (D. Haw. October 24, 2011); Kevelighan v. Trott & Trott, P.C., No. 09–12543, 2011 WL 2076336, at *4 (E. D. Mich. 2011 May 26, 2011); Lal v. Am. Home Servicing, Inc., 680 F. Supp. 2d 1218, 1223 (E. D. Cal. 2010); Luciw v. Bank of Am., N.A., No. 5:10-cv-02779-JF/HRL, 2010 WL 3958715, at *5 (N. D. Cal. Oct. 7, 2010); Allen v. United Fin. Mortg. Corp., 660 F. Supp. 2d 1089, 1097 (N. D. Cal.2009); Cootey v. Countrywide Home Loans, Inc., No. 11–00152 JMS/KSC, 2011 WL 4853333, at *6.

The motion to dismiss Count III is allowed.

### C. Borrower Claims (Count IV)

Count IV against JPMC and the FDIC seeks damages under TILA and Reg. Z for the same alleged improprieties surrounding plaintiff's original loan execution in 2007 discussed in Sections I and III(a) above.[5] It is true that "rescission is not the only remedy for violations of the duties imposed by TILA. Congress envisaged other remedies or '[a]dditional relief ... for violations of [TILA] not related to the right to rescind.' 15 U.S.C. § 1635(g)." King, 672 F. Supp. 2d at 251.

---

[5] Plaintiff also brings this count under the MCCCDA, but note that TILA and the MCCCDA are to be viewed "co-extensively and in parallel" as discussed in Section III(A) above.

14

However, such claims are properly considered "borrower claims" as defined by the PAA because they arise out of the original mortgage transaction and therefore are "related [ ] to any loan or commitment to lend made by the failed bank [here, WAMU] prior to failure." (PAA §2.5.) Under the PAA, the FDIC, as receiver of WAMU, explicitly and solely retained liability for such claims; thus, JPMC did not assume them when it purchased the WAMU assets in 2008. Therefore, the FDIC is the only proper defendant as to the pre-receivership borrower claims and Count IV fails to state a claim against JPMC. Yeomalakis v. FDIC, 562 F.3d 56, 60 (1st Cir. 2009) ("When Washington Mutual failed, Chase Bank acquired many assets but its agreement with the FDIC retains for the FDIC [pre-receivership borrower claims for monetary relief] thus the FDIC was and remains the appropriate party in interest.")

As to the FDIC, FIRREA establishes a set of mandatory administrative claim procedures for filing and resolving all claims against a failed depository institution in receivership. See generally 12 U.S.C. §1821(d)(3) - (13). To be considered, claims must be brought before the bar date established for creditors under 12 U.S.C. §1821(d)(3)(B)(I). The bar date operates as a mandatory barrier to all claims brought after that date. 12 U.S.C. §1821(d)(5)(C)(I). Only if the claimant establishes that he or she did not "receive notice of the appointment of the receiver in time to file such claim" and the "claim is filed in time to permit payment" does FIRREA permit the receivership to consider such late claims; however it is not obligated to do so. 12 U.S.C. §1821(d)(5)(C)(ii); Palumbo v. Roberti, 839 F. Supp. 80, 84 (D. Mass. 1993) (the language of section 1821(d)(5)(C)(ii) is discretionary"). Limited judicial review is

15

provided under FIRREA for disallowed or ignored claims pursuant to 12 U.S.C. §1821(d)(5)(A)(I), however, no judicial review is available for borrower claims either disallowed solely by operation of the bar-date or not raised at all through the mandatory administrative review process set up under FIRREA. 12 U.S.C. §§1821(d)(5)(C)(I), (d)(13)(D)(i)-(ii)); Heno v. F.D.I.C., 20 F.3d 1204, 1207 (1st Cir. 2004) ("Failure to participate in the administrative claims review process [ ] is a "jurisdictional bar" to judicial review.")

Here, although plaintiff made a last ditch effort to have her claims considered two and a half years after the bar date set by the FDIC, its disallowance of plaintiff's application (Docket # 31 at 1-2) was correct both as a matter of law and discretion.

Moreover, the statute, 12 U.S.C. § 1821(d)(6)(A)(ii), specifies that any judicial review must be initiated in the district within which the depository institution's principal place of business is located or in the District Court for the District of Columbia. The complaint does not set forth these requisites. This failure is fatal. Lloyd v. FDIC, 22 F. 3d 335, 337-338 (1st Cir. 1994).

Count IV is dismissed as to JPMC because it is not a proper party and it is dismissed as against the FDIC, for lack of subject matter jurisdiction for failure to timely exhaust administrative remedies and for failure to file in the correct jurisdiction.[6]

### D. FDCPA Claim (Count V)

---

[6] Plaintiff's cross-motion to stay this action for 180 days so that plaintiff could exhaust her administrative remedies under FIRREA is denied as moot.

Count V claims against CHF for violations of the federal Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.), under 15 U.S.C. § 1692k which allows recovery of actual and statutory damages. Plaintiff alleges that defendant (1) failed to provide proper and complete responses to her QWR letter; (2) collected on the loan debt when it has not been "shown to be owed;" (3) failed to respond to her "30 day demand letter;" (4) failed to register as a debt collector; and (5) failed to register to do business in Massachusetts with the Secretary of State.

Both provisions of the FDCPA that plaintiff invokes (15 U.S.C. §§ 1692 (e)-(f)) only apply to "debt collectors." 15 U.S.C. § 1692(a)(6)(f)(iii) of the FDCPA provides that the term "debt collector" excludes any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to another to the extent such activity… "concerns a debt which was not in default at the time it was obtained ..."

Plaintiff fails to allege that the subject loan was in default at any time, including the time when JPMC or CHF obtained or would have obtained the loan and/or servicing rights therein. She has therefore failed to plead a claim under the FDCPA. See Costigan v. CitiMortgage, Inc, No. 10 Civ. 8776 (SAS), 2011 WL 3370397, at *9 (S. D. N. Y. Aug. 2, 2011); Siwulec v. Chase Home Finance, LLC, No. 10-1875 (FLW), 2010 WL 5071353 at *3 - 5 (D. N. J. Dec. 7, 2010); see also Pomykala v. PCFS Mortg. Resources Div. of Provident Bank, No. Civ.A. 04-11956-RWZ, 2005 WL 2149411, at *2 (D. Mass. Sept. 1, 2005).

Plaintiff brings related "debt collection" claims under Mass. Gen. L. c. 93, § 49 (the Massachusetts state counterpart to the FDCPA) and 209 CMR 18.00 (the

17

Massachusetts statute regulating the "Conduct of the Business of Debt Collectors and Loan Services"), which do not provide private rights of action. To the extent plaintiff pleads them only as a basis for derivative liability under Mass. Gen. L. c. 93A[7], I address them below.

### E. Mass. Gen. L. c. 93A Deceptive Practices Claim (Count VII)

Mass. Gen. L. c. 93A, § 2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 9 enables a person who has been "injured by another person's use or employment of any method, act or practice declared to be unlawful by [Mass. Gen. L. c. 93A, § 2]" to bring a civil action for money damages. The statute "requires a showing of conduct that (1) falls within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous," and causes "substantial injury to consumers or other businesspersons." Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 37 (1st Cir.2008) (internal brackets omitted); Hershenow v. Enterprise Rent-A-Car Company Of Boston, Inc., 445 Mass. 790 (2006).

Plaintiff asserts that a violation of any of the statutes complained of herein constitute per se violations of Mass. Gen. L. c. 93A, § 2. However, even if "an act that

---

[7] See Mass. Gen. L. c. 93, § 49 provides "Failure to comply with the provisions of this section shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A."; Ishaq v. Wachovia Mortg., FSB, No. 09-11422-RGS, 2010 WL 1380386, at * 6 (D. Mass. Apr. 2, 2010) ("without an enabling statute to support it, a private cause of action cannot be inferred from an agency regulation.... [209 CMR 18.00 et. seq.] was promulgated by the Commissioner of Banks pursuant to the authority granted her by Mass. Gen. Laws ch. 93, § 24A. The statute contains no hint that a private cause of action was created or intended.")(internal citations and quotations omitted).

18

violates a consumer statute is per se deceptive under G.L. c. 93A, § 2 ... that does not make it per se an injury under G.L. c. 93A, § 9." Hershenow, 445 Mass. at 799, n. 17. A plaintiff seeking a remedy under Mass. Gen. L. c. 93A, § 9, must still demonstrate that even a per se deception caused an actual loss. Gather v. Credit Control Services, 623 F. Supp. 2d 113 (D. Mass. 2009). Injury under chapter 93A, § 9 means economic injury in the traditional sense. Rule v. Fort Dodge Animal Health, Inc., 607 F. 3d 250, *255 (1st Cir. 2010) (plaintiff suffering no economic loss cannot maintain an action under Mass. Gen. L. c. 93A).

**IV. Conclusion**

Defendants' motions to dismiss (Docket ## 13, 9, 15) are ALLOWED, and plaintiff's first amended complaint (Docket # 1 Ex. B) is DISMISSED. Count IX seeking an injunction against defendants during the pendency of this action and Count VIII seeking a declaratory judgment on standing are DISMISSED AS MOOT. Judgment may be entered dismissing the complaint.

|  |  |
|---|---|
| January 27, 2012 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |